ROY NOBLE LEE, Justice,
for the Court:
The Mississippi Workmen’s Compensation Commission entered an order awarding temporary total and minimum permanent partial benefits to claimant, C.L. Harris.[1] The order reversed the administrative judge, who denied compensation for permanent partial disability. The employer, Chicago Mill & Lumber Company, appealed to the Circuit Court of Washington County, Honorable B.B. Wilkes, presiding, which reversed the order of the Commission as to the allowance of permanent partial disability. The claimant has appealed to this Court.
The only question presented on this appeal is whether or not there is sufficient medical evidence to establish a permanent disability under'the Mississippi Workmen’s Compensation Act.
The claimant was twenty-four (24) years of age and worked as an edger operator for Chicago Mill & Lumber Company. In March of 1979, he and a co-worker were carrying a saw blade, which had been folded and strapped to facilitate handling, and were moving the blade upstairs. The strap broke, shifting the weight to Harris and injuring his back. Harris complained to his foreman and was assigned to another job in the mill, which involved lighter work. On May 11,1979, the foreman ordered claimant to either return to his former duties or take a reduction in pay for the lighter work. Claimant refused both, and his employment was terminated.
The employer began paying workmen’s compensation as of May 11, 1979, together with medical expenses, and paid the compensation until August 20, 1979, when claimant was finally released from medical treatment to work without restrictions. In September, 1979, claimant began work with another company and, since that time, has worked a minimum of 40 hours a week at a wage of $3.45 an hour. His last medical visit was in December, 1979, and he has seen no doctor since that time.
Claimant testified that he is unable to do heavy lifting without pain and that he is assisted in any lifting required of him in his present work. Co-workers testified that they helped Harris with heavy work at the plant.
*558 The employer concedes that claimant was injured on the job in March of 1979, sustaining a sprained back; and that he was entitled to temporary disability benefits from May 11, 1979, until August 20, 1979, for which he has been paid.
Chapter 276, Laws of 1960, amended Section 6998-02, Mississippi Code of 1942, now Mississippi Code Annotated § 71-3-3 (1972). The preamble to Chapter 276, Laws of 1960, states:
AN ACT to amend Section 6998, Mississippi Code of 1942, so as to clarify the definition of “disability”; and for related purposes.
The amended section follows:
(i) “Disability” means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings. (Emphasis added) Miss.Code Ann. § 71-3-3 (Supp.1983).
The burden of proof rests upon the claimant to establish by competent evidence all the elements of his claim together with the extent and degree of his claimed disability. American Potash & Chemical Corporation, 228 So.2d 867 (Miss.1969); Narkeeta, Inc. v. McCoy, 247 Miss. 65, 153 So.2d 798 (1963).
Claimant cites Malone & Hyde of Tupelo, Inc. v. Kent, 250 Miss. 879, 168 So.2d 526 (1964), which is distinguished from the case sub judice (involving a sprained back). In Malone, a ruptured disc was diagnosed and whether or not there were medical findings to support the disability as permanent in any degree, such as is the issue in the present case, was not involved.
Here, Dr. J.B. Yeldell, a family practitioner, testified for claimant. He first saw and examined claimant on June 12, 1979, and last saw him on December 15, 1979. He diagnosed claimant’s complaint as myo-sitis, an inflammation of the back muscles. On October 23, 1979, he examined claimant for soreness in the back and changed his diagnosis to chronic sprained back muscles.
Dr. Yeldell did not express an opinion that claimant had a permanent injury to his back as a result of the sprain in March, 1979. His testimony thereasto follows:
Q. Do you have an opinion, based upon reasonable medical certainty, as to whether or not this condition which you diagnosed will be permanent?
A. Well, I usually do not try to make that determination on my own, leave that up to the orthopedic surgeons to make that diagnosis.
But based on my experience, depending upon the severity of the original injury, my experience has been that from time to time, if one has a severe sprained back, that he can expect some residuals. In other words, there will be times when he will have some reason to complain about pain in the back.
Q. Okay. Do you have an opinion, based upon reasonable medical certainty, as to whether or not the condition you diagnosed regarding Mr. Harris has resulted in a permanent impairment of physical function?
(Interruption)
A. I think I wouldn’t be able to answer that question fairly since I haven’t seen him since back then in 1979.
[[Image here]]
Q. Based upon the last time you saw Mr. Harris, did you have an opinion, based upon reasonable medical certainty, as to whether or not the condition you diagnosed regarding Mr. Harris has resulted in a permanent impairment of physical function?
A. I would have to answer that the same way, that last time I saw him I hadn’t reached a point where I could make an opinion.
Q. Okay.
A. As to the permanency of his disability
Q. Okay.
Do you have an opinion, based upon reasonable medical certainty, as to whether or not Mr. Harris will require future medical attention?
*559 A. Well, at the last time I saw him, my opinion was that quite possibly he could require some future medical attention. ⅜ * ⅜ * * *
A. Based upon reasonable medical certainty, he should have some improvement in his condition as time went on.
[[Image here]]
A. Right. Now last time I actually saw him was 12/15/79. So I have not seen him at all since that date.
Q. So you have no opinion as to what his condition might be now.
A. Certainly not.
Dr. David Bissett Keddy, a family practitioner, who had a special interest in matters pertaining to sports medicine involving strains and sprains, testified for the employer. That testimony follows:[2]
Q. All right.
Doctor, in your opinion and again based upon reasonable medical certainty, did Mr. Harris, on August 20,1979, the last date you saw him, suffer from a permanent impairment of physical function as a result of the condition for which you treated him?
A. No.
[[Image here]]
A. No, no. Because it was — to me he was normal, ready for normal work. And, you know, that’s as far as I normally go.
Q. Okay.
Let me ask you this. If someone was to have this back pain, as he did evidently on 7/12/79, is there a probability that this could reoccur, this back pain could reoccur at a later time?
A. Only if he suffers another injury.
Q. Okay. In other words, you don’t think it would be a relapse of the first injury?
A. No, no.
Q. Why do you say that?
A. Because he was cured. It’s like having an ulcer that is healed. Once it’s healed, it’s healed. You may get another ulcer because you haven’t removed the stress, so you get another ulcer. It may or may not be in the same spot.
You can sprain your back and it will heal, and it will heal in a very specific way, and if under certain circumstances you can predict, and his back responded as one would predict. And after six weeks of physiotherapy, after having the myelogram, after being sure that there is no disk or anything, he did beautifully.
******
Q. Okay. And you do not feel that this same sprain could reoccur, the same injury?
A. No, it can’t. He can have another sprain, but it’s not going to come from the same problem. He can resprain himself doing anything, but it has healed.
We are of the opinion that the medical evidence did not support a permanent injury to claimant’s back; that he failed to meet the burden of proof; and that the judgment of the lower court should be, and is, affirmed. Temporary total disability is allowed for the period conceded and indicated, and permanent partial disability is denied.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.

. The decision of the Commission was split 2-1.

. He examined claimant on July 12, 1979, and diagnosed his condition as a sprain of the back.